UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC, <br><br>          Plaintiff, <br>     v. <br><br>APPLE, INC., et al, <br><br>          Defendants. | Case No.: 13-mc-80020 LHK (PSG) <br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION** <br><br>**(Re: Docket No. 1)** |

Before the court is MicroUnity Systems Engineering, Inc.'s ("MicroUnity") motion to compel Adobe Systems, Inc. ("Adobe") to provide nine additional versions of its source code in response to MicroUnity's subpoena. Following Judge Lloyd's recusal,[1] the dispute was reassigned to the undersigned. Having considered the parties' papers, the court GRANTS MicroUnity's motion.

MicroUnity first served the subpoena on Adobe in March 5, 2012, seeking source code for different versions of Adobe's Flash Player featured on the accused devices in MicroUnity's underlying suit.[2] Adobe at first responded that MicroUnity should get the source code directly

---

[1] *See* Docket No. 3.

1

Case No.: 12-mc-80020-LHK (PSG)
ORDER

from the defendants in the suit.[3]  The defendants in turn informed MicroUnity that they did not have Adobe's source code.[4]  MicroUnity, Adobe, and the defendants then engaged in discussions regarding Adobe's production,[5] resulting in MicroUnity receiving ten versions of Adobe's source code, which reflected Flash Player on several of the accused devices.  Adobe apparently made this initial production subject to the protective order between MicroUnity and the defendants in the underlying case.

Approximately three months later, MicroUnity again approached Adobe seeking the additional nine versions of the source code at issue in this motion.[6]  In their subsequent conversations, two issues arose: (1) whether Adobe had any further obligation to produce the additional versions, and (2) if it did produce the additional versions, how much of the code MicroUnity could print in hard copy.[7]  Unable to reach an agreement on either dispute, MicroUnity moved to compel.

Those same two issues are the heart of the dispute presently before the court.  MicroUnity and Adobe diverge on whether Adobe is obligated to supplement its production to include the nine additional versions MicroUnity seeks.  According to Adobe, MicroUnity negotiated only for the ten versions Adobe provided, and so upon delivery of that code, Adobe satisfied its obligations under the subpoena.[8]  According to Adobe, counsel for MicroUnity confessed in a telephone conversation that he forgot during the initial negotiations to account for the Motorola devices

---

[2] *See* Docket No. 1 Ex. 2.

[3] *See id.* Ex. 4.

[4] *See id.* Ex. 5.

[5] *See id.* Exs. 4, 5.

[6] *See id.* Ex. 6.

[7] *See id.*

[8] *See* Docket No. 4 Ex. 1.

2
Case No.: 12-mc-80020-LHK (PSG)
ORDER

requiring production of the nine versions in dispute.[9] MicroUnity disagrees that the missing versions are only for Motorola products, citing emails in which its counsel informed Adobe's counsel that versions for Samsung and HTC also were missing.[10] MicroUnity further maintains that it never compromised with Adobe for a number of versions less than all of the versions appearing on the accused devices.

In addition to contesting that it has any further obligations, Adobe also objects to the amount of source code MicroUnity wants to print. MicroUnity asserts that it needs at least 72 pages for each of the nine versions of code it seeks.[11] During the meet and confer, Adobe wanted to cap the total amount of pages MicroUnity could print at 700 pages, to which MicroUnity objected because it already has printed 577 pages.[12] MicroUnity asserts that the caps in the protective order in the underlying case are sufficient to protect Adobe's intellectual property and suggests in the alternative that Adobe confirm in a declaration that the source code in the outstanding nine versions includes the same instructions as in the ten versions already produced.

## I. LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 45, parties to a case may obtain through subpoena discovery from nonparties within the limits of Fed. R. Civ. P. 34.[13] Rule 34, which governs third-party discovery, authorizes parties to request discovery of "any designated documents or electronically stored information" from nonparties within the scope of Fed. R. Civ. P. 26(b). Rule 26(b), in turn, provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to

---

[9] *See id.*

[10] *See* Docket No. 1 Ex. 6.

[11] *See id.*

[12] *See id.*

[13] *See* Fed. R. Civ. P. 45 advisory committee note (1970); *see also Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

3

Case No.: 12-mc-80020-LHK (PSG)
ORDER

any party's claim or defense."  The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[14]

Nonparties served subpoenas may object to producing the requested documents "before the earlier of the time specified for compliance or 14 days after the subpoena is served."[15]  The serving party may then "move the issuing court for an order compelling production or inspection," but any production or inspection "may be required only as directed in the order."[16]  "[T]he order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[17]

## II.   DISCUSSION

Other than pointing to the purported agreement, Adobe makes no argument about any undue burden or oppressiveness from having to produce the additional versions.  The court thus addresses primarily the disputed agreement between the parties and whether Adobe remains obligated under the subpoena.

Adobe provides several cases in which courts required production consistent with only a winnowed version of a broader subpoena.[18]  But in each of those cases, the parties either agreed to narrow the scope of the subpoena or the requesting party narrowed the requests itself.[19]  Here, in

---

[14] *See Gonzales*, 234 F.R.D. at 680 (internal citations and quotations omitted).

[15] Fed. R. Civ. P. 45(c)(2)(B).

[16] *Id.*

[17] *Id.*

[18] *See* Docket No. 4.

[19] *See Wi-Lan Inc. v. LG Elecs., Inc.*, Case No. 10-cv-2351-WQH (BLM), 2010 U.S. Dist. LEXIS 127730, at *4 (S.D. Cal. Dec. 1, 2010) (noting that the plaintiff "confirmed that the parties had agreed on the scope of the subpoena and that the only remaining dispute was the timing"); *Micron*

4

Case No.: 12-mc-80020-LHK (PSG)
ORDER

contrast, the parties dispute whether they negotiated a compromised scope.  To support its assertion, Adobe provides an attorney declaration and points to emails in which its counsel explained that he believed an agreement existed.[20]  MicroUnity, for its part, points to the same email chain because its counsel denied any accession that obviated Adobe's obligation to provide all versions of Flash Player appearing on the accused devices.[21]

The source of their dispute appears to stem from whether Adobe received all of the proper information from the defendants in the underlying action to provide the versions MicroUnity requested.  According to Adobe, it provided the versions defendants identified, which is why it believes its production is complete.  It appears that either through the defendants' misinformation or MicroUnity's oversight, not all of the versions were produced.   Given the conflicting evidence, the court finds that Adobe has not satisfied all of its obligations under the subpoena.  But given the chain of events, including MicroUnity's three-month delay in notifying Adobe of any issues in its production and Adobe's assertion – not denied by MicroUnity – that at least part of the problem arose from MicroUnity's oversight regarding versions for Motorola, some of the blame for this situation falls on MicroUnity.  Accordingly, Adobe must produce the nine versions MicroUnity seeks but cost-shifting is appropriate to lessen the burden on Adobe from having to make a second production.[22]

Having determined that Adobe must make the production, the court addresses the printing issue.  As noted above Adobe wants to limit the number of pages of source code MicroUnity may

---

*Tech., Inc. v. Tessera, Inc.*, Case No. C 06-80096 MISC. JW (HRL), 2006 U.S. Dist. LEXIS 42072, at *2-3 (N.D. Cal. June 14, 2006) (addressing a version of a subpoena narrowed by the requesting party); *EEOC v. Ann's Linens Co.*, Case No. 06-80009-Misc. MMC (WDB), 2006 WL 1329548, at *1 n.1 (N.D. Cal. May 15, 2006) (noting that the parties "resolved all but two issues in enforcement of the subpoena")

[20] *See* Docket No. 1 Ex. 6; Docket No. 4 Ex. 1.

[21] *See* Docket No. 1 Ex. 6.

[22] *See* Fed. R. Civ. P. 45(c)(2)(B)(ii).  The court also notes that MicroUnity offered to pay Adobe's costs and fees associated with the production during the meet and confer.  *See* Docket No. 1 Ex. 6.

Case No.: 12-mc-80020-LHK (PSG)
ORDER

print.  It offered a cap of 700 in discussions prior to this motion, which MicroUnity rejected.[23]  Adobe does not explicitly request the same 700-cap in its opposition, seeking instead for the court to limit MicroUnity to printouts of source code that MicroUnity could attach to substantive papers – essentially printouts that are not duplicative of Adobe code MicroUnity already has.  MicroUnity maintains that the source code cap in the protective order between the parties in the case is sufficient.  The cap in that order prohibits printing more than 10% or 500 pages of the total source code, whichever is lesser, of any software release.[24]  MicroUnity asserts that the code it seeks for each version falls below these limits and so it should be able to print the code that it wants.

Although Adobe argues that MicroUnity does not need to introduce every single version of the source code into evidence because the code presumably is repetitive, Adobe has not certified either to MicroUnity or to the court that the code in fact is duplicative.  As to Adobe's position that further distribution of copies of the source code to the various parties who may see the printouts under the protective order threatens its intellectual property, the court is not persuaded that the protective order under which it already produced is insufficient.  It provides significant procedures and security measures to ensure the protection of produced source code.  The court thus finds that the caps and the procedures in the protective order in the underlying case provide sufficient security for Adobe's intellectual property.

The court also briefly addresses MicroUnity's motion to seal the motion to compel and Exhibits 4, 5, 6, and 8 to Eric Enger's declaration in support of the motion.  The court GRANTS MicroUnity's request as to Exhibit 8 as it appears that the infringement contentions include proprietary information.  The court DENIES the requests as to the motion itself and Exhibits 4, 5,

---

[23] *See* Docket No. 1 Ex. 6.

[24] *See* Docket No. 1 Ex. 2.

Case No.: 12-mc-80020-LHK (PSG)
ORDER

and 6 because MicroUnity has not made a particularized showing of what harm would befall it if emails relating its meet-and-confer efforts with Adobe were disclosed.[25]

IT IS HEREBY ORDERED that within fourteen days, Adobe shall produce the nine versions of its source code that MicroUnity requests.

IT IS FURTHER ORDERED that the production shall be subject to the procedures, caps, and protections of the protective order entered between the parties to the Eastern District of Texas case.

IT IS FURTHER ORDERED that MicroUnity shall pay Adobe's reasonable expenses for making this second production. Within seven days of making its production, Adobe shall provide MicroUnity with details regarding those expenses. Within seven days of receiving Adobe's report, MicroUnity shall provide payment of those expenses.

IT IS FURTHER ORDERED that within fourteen days, MicroUnity shall file unsealed versions of its motion to compel and all supporting declarations and exhibits, save for Exhibit 8.

**IT IS SO ORDERED.**

Dated:  May 30, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[25] *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); Civil L.R. 79-5.