United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC, | )    Case No.: 13-mc-80020 LHK (PSG) |
| | ) |
|                 Plaintiff, | )    **ORDER GRANTING PLAINTIFF'S** |
| | )    **MOTION TO COMPEL** |
|       v. | )    **PRODUCTION** |
| | ) |
| APPLE, INC., et al, | )    **(Re: Docket No. 1)** |
| | ) |
|                 Defendants. | ) |

Before the court is MicroUnity Systems Engineering, Inc.'s ("MicroUnity") motion to compel Adobe Systems, Inc. ("Adobe") to provide nine additional versions of its source code in response to MicroUnity's subpoena.  Following Judge Lloyd's recusal,[1] the dispute was reassigned to the undersigned.  Having considered the parties' papers, the court GRANTS MicroUnity's motion.

MicroUnity first served the subpoena on Adobe in March 5, 2012, seeking source code for different versions of Adobe's Flash Player featured on the accused devices in MicroUnity's underlying suit.[2]  Adobe at first responded that MicroUnity should get the source code directly

---

[1] *See* Docket No. 3.

**United States District Court**
For the Northern District of California

from the defendants in the suit.[3]  The defendants in turn informed MicroUnity that they did not

have Adobe's source code.[4]  MicroUnity, Adobe, and the defendants then engaged in discussions

regarding Adobe's production,[5] resulting in MicroUnity receiving ten versions of Adobe's source

code, which reflected Flash Player on several of the accused devices.  Adobe apparently made this

initial production subject to the protective order between MicroUnity and the defendants in the

underlying case.

Approximately three months later, MicroUnity again approached Adobe seeking the

additional nine versions of the source code at issue in this motion.[6]  In their subsequent

conversations, two issues arose: (1) whether Adobe had any further obligation to produce the

additional versions, and (2) if it did produce the additional versions, how much of the code

MicroUnity could print in hard copy.[7]  Unable to reach an agreement on either dispute, MicroUnity

moved to compel.

Those same two issues are the heart of the dispute presently before the court.  MicroUnity

and Adobe diverge on whether Adobe is obligated to supplement its production to include the nine

additional versions MicroUnity seeks.  According to Adobe, MicroUnity negotiated only for the

ten versions Adobe provided, and so upon delivery of that code, Adobe satisfied its obligations

under the subpoena.[8]  According to Adobe, counsel for MicroUnity confessed in a telephone

conversation that he forgot during the initial negotiations to account for the Motorola devices

---

[2] *See* Docket No. 1 Ex. 2.

[3] *See id.* Ex. 4.

[4] *See id.* Ex. 5.

[5] *See id.* Exs. 4, 5.

[6] *See id.* Ex. 6.

[7] *See id.*

[8] *See* Docket No. 4 Ex. 1.

2

Case No.: 12-mc-80020-LHK (PSG)
ORDER

requiring production of the nine versions in dispute.[9]  MicroUnity disagrees that the missing

versions are only for Motorola products, citing emails in which its counsel informed Adobe's

counsel that versions for Samsung and HTC also were missing.[10]  MicroUnity further maintains

that it never compromised with Adobe for a number of versions less than all of the versions

appearing on the accused devices.

In addition to contesting that it has any further obligations, Adobe also objects to the

amount of source code MicroUnity wants to print.  MicroUnity asserts that it needs at least 72

pages for each of the nine versions of code it seeks.[11]  During the meet and confer, Adobe wanted

to cap the total amount of pages MicroUnity could print at 700 pages, to which MicroUnity

objected because it already has printed 577 pages.[12]  MicroUnity asserts that the caps in the

protective order in the underlying case are sufficient to protect Adobe's intellectual property and

suggests in the alternative that Adobe confirm in a declaration that the source code in the

outstanding nine versions includes the same instructions as in the ten versions already produced.

## I.        LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 45, parties to a case may obtain through subpoena discovery

from nonparties within the limits of Fed. R. Civ. P. 34.[13]  Rule 34, which governs third-party

discovery, authorizes parties to request discovery of "any designated documents or electronically

stored information" from nonparties within the scope of Fed. R. Civ. P. 26(b).  Rule 26(b), in turn,

provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to

---

[9] *See id.*

[10] *See* Docket No. 1 Ex. 6.

[11] *See id.*

[12] *See id.*

[13] *See* Fed. R. Civ. P. 45 advisory committee note (1970); *see also Gonzales v. Google Inc.*, 234
F.R.D. 674, 680 (N.D. Cal. 2006).

Case No.: 12-mc-80020-LHK (PSG)
ORDER

any party's claim or defense."  The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[14]

Nonparties served subpoenas may object to producing the requested documents "before the earlier of the time specified for compliance or 14 days after the subpoena is served."[15]  The serving party may then "move the issuing court for an order compelling production or inspection," but any production or inspection "may be required only as directed in the order."[16]  "[T]he order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[17]

## II.    DISCUSSION

Other than pointing to the purported agreement, Adobe makes no argument about any undue burden or oppressiveness from having to produce the additional versions.  The court thus addresses primarily the disputed agreement between the parties and whether Adobe remains obligated under the subpoena.

Adobe provides several cases in which courts required production consistent with only a winnowed version of a broader subpoena.[18]  But in each of those cases, the parties either agreed to narrow the scope of the subpoena or the requesting party narrowed the requests itself.[19]  Here, in

[14] *See Gonzales*, 234 F.R.D. at 680 (internal citations and quotations omitted).

[15] Fed. R. Civ. P. 45(c)(2)(B).

[16] *Id.*

[17] *Id.*

[18] *See* Docket No. 4.

[19] *See Wi-Lan Inc. v. LG Elecs., Inc.*, Case No. 10-cv-2351-WQH (BLM), 2010 U.S. Dist. LEXIS 127730, at *4 (S.D. Cal. Dec. 1, 2010) (noting that the plaintiff "confirmed that the parties had agreed on the scope of the subpoena and that the only remaining dispute was the timing"); *Micron*

4

Case No.: 12-mc-80020-LHK (PSG)
ORDER

United States District Court
For the Northern District of California

contrast, the parties dispute whether they negotiated a compromised scope.  To support its

assertion, Adobe provides an attorney declaration and points to emails in which its counsel

explained that he believed an agreement existed.[20]  MicroUnity, for its part, points to the same

email chain because its counsel denied any accession that obviated Adobe's obligation to provide

all versions of Flash Player appearing on the accused devices.[21]

        The source of their dispute appears to stem from whether Adobe received all of the proper

information from the defendants in the underlying action to provide the versions MicroUnity

requested.  According to Adobe, it provided the versions defendants identified, which is why it

believes its production is complete.  It appears that either through the defendants' misinformation

or MicroUnity's oversight, not all of the versions were produced.   Given the conflicting evidence,

the court finds that Adobe has not satisfied all of its obligations under the subpoena.  But given the

chain of events, including MicroUnity's three-month delay in notifying Adobe of any issues in its

production and Adobe's assertion – not denied by MicroUnity – that at least part of the problem

arose from MicroUnity's oversight regarding versions for Motorola, some of the blame for this

situation falls on MicroUnity.  Accordingly, Adobe must produce the nine versions MicroUnity

seeks but cost-shifting is appropriate to lessen the burden on Adobe from having to make a second

production.[22]

        Having determined that Adobe must make the production, the court addresses the printing

issue.  As noted above Adobe wants to limit the number of pages of source code MicroUnity may

---

*Tech., Inc. v. Tessera, Inc.*, Case No. C 06-80096 MISC. JW (HRL), 2006 U.S. Dist. LEXIS
42072, at *2-3 (N.D. Cal. June 14, 2006) (addressing a version of a subpoena narrowed by the
requesting party); *EEOC v. Ann's Linens Co.*, Case No. 06-80009-Misc. MMC (WDB), 2006 WL
1329548, at *1 n.1 (N.D. Cal. May 15, 2006) (noting that the parties "resolved all but two issues in
enforcement of the subpoena")

[20] *See* Docket No. 1 Ex. 6; Docket No. 4 Ex. 1.

[21] *See* Docket No. 1 Ex. 6.

[22] *See* Fed. R. Civ. P. 45(c)(2)(B)(ii).  The court also notes that MicroUnity offered to pay Adobe's
costs and fees associated with the production during the meet and confer.  *See* Docket No. 1 Ex. 6.

5

Case No.: 12-mc-80020-LHK (PSG)
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

print.  It offered a cap of 700 in discussions prior to this motion, which MicroUnity rejected.[23]

Adobe does not explicitly request the same 700-cap in its opposition, seeking instead for the court

to limit MicroUnity to printouts of source code that MicroUnity could attach to substantive papers

– essentially printouts that are not duplicative of Adobe code MicroUnity already has.  MicroUnity

maintains that the source code cap in the protective order between the parties in the case is

sufficient.  The cap in that order prohibits printing more than 10% or 500 pages of the total source

code, whichever is lesser, of any software release.[24]  MicroUnity asserts that the code it seeks for

each version falls below these limits and so it should be able to print the code that it wants.

      Although Adobe argues that MicroUnity does not need to introduce every single version of

the source code into evidence because the code presumably is repetitive, Adobe has not certified

either to MicroUnity or to the court that the code in fact is duplicative.  As to Adobe's position that

further distribution of copies of the source code to the various parties who may see the printouts

under the protective order threatens its intellectual property, the court is not persuaded that the

protective order under which it already produced is insufficient.  It provides significant procedures

and security measures to ensure the protection of produced source code.  The court thus finds that

the caps and the procedures in the protective order in the underlying case provide sufficient

security for Adobe's intellectual property.

      The court also briefly addresses MicroUnity's motion to seal the motion to compel and

Exhibits 4, 5, 6, and 8 to Eric Enger's declaration in support of the motion.  The court GRANTS

MicroUnity's request as to Exhibit 8 as it appears that the infringement contentions include

proprietary information.  The court DENIES the requests as to the motion itself and Exhibits 4, 5,

---

[23] *See* Docket No. 1 Ex. 6.

[24] *See* Docket No. 1 Ex. 2.

6

Case No.: 12-mc-80020-LHK (PSG)
ORDER

and 6 because MicroUnity has not made a particularized showing of what harm would befall it if emails relating its meet-and-confer efforts with Adobe were disclosed.[25]

      IT IS HEREBY ORDERED that within fourteen days, Adobe shall produce the nine versions of its source code that MicroUnity requests.

      IT IS FURTHER ORDERED that the production shall be subject to the procedures, caps, and protections of the protective order entered between the parties to the Eastern District of Texas case.

      IT IS FURTHER ORDERED that MicroUnity shall pay Adobe's reasonable expenses for making this second production.  Within seven days of making its production, Adobe shall provide MicroUnity with details regarding those expenses.  Within seven days of receiving Adobe's report, MicroUnity shall provide payment of those expenses.

      IT IS FURTHER ORDERED that within fourteen days, MicroUnity shall file unsealed versions of its motion to compel and all supporting declarations and exhibits, save for Exhibit 8.

**IT IS SO ORDERED.**

Dated:  May 30, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[25] *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); Civil L.R. 79-5.

Case No.: 12-mc-80020-LHK (PSG)
ORDER